UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT RICHMOND, LYNN RICHMOND,
his wife,

              Plaintiffs,

-vs-                                          Case No. 5:05-cv-304-Oc-10GRJ

THE PEP BOYS-MANNY, MOE & JACK,
INC., a foreign corporation,

              Defendant.
_____

## **O R D E R**

This state law negligence and breach of contract diversity case is before the Court for consideration of the Defendant's Motion to Dismiss (Doc. 8), to which the Plaintiffs have filed a response in opposition (Doc. 19). The Plaintiffs contend that the Defendant failed to provide sufficient personnel to assist Robert Richmond in unloading cargo he delivered to the Defendant, and that the Defendant failed to take adequate safety precautions to protect him while he was unloading. As a result, Mr. Richmond fell and suffered physical injuries. For the reasons that follow the Defendant's motion is due to be granted in part and denied in part.

### **Background and Facts**

The following facts are alleged in the Plaintiffs' Second Amended Complaint (Doc. 3) and are taken as true for the purposes of the motion to dismiss. The Plaintiff Robert Richmond worked as a truck driver for Swift Transportation ("Swift"). He and his wife, Lynn

Richmond, are residents of Marion County, Florida. The Defendant, The Pep Boys-Manny, Moe & Jack, Inc. ("Pep Boys") is a Pennsylvania corporation authorized to do business in Florida, including Marion County. At the time of the incident in question, Pep Boys owned and/or operated and maintained control over an automotive services center and retail store located at 2601 Tyrone Boulevard, St. Petersburg, Florida ("Store # 252"). At some point after November 20, 2001, Pep Boys closed this store.

From March 1, 1999 through March 5, 2002, Swift and Pep Boys were parties to a Contract Transportation Agreement for Dedicated Carriage Only.[1] See Doc. 3, Ex. A, p. 1. Pursuant to the terms of the Contract, Pep Boys was designated as the "Shipper" of various automotive parts and goods and Swift was designated as the "Carrier" of these parts and goods. Id. The Contract provided, in part that:

**LOADING AND UNLOADING**

> Shipper agrees to be responsible for all loading and counting of its shipments. . . . Carrier agrees that its drivers will assist with unloading at all final destinations and intermediate stops at no additional charge if so requested by the Shipper or its consignee. The term "assist with unloading" is defined as moving all freight off the trailer onto the consignee's dock or scissors-lift. Shipper or its consignee, will be responsible for providing pallet jacks for palletized freight, and a suitable and accessible dock or scissors-lift adequate for unloading all of the cargo from Carrier's trailer.

See Doc. 3, Ex. A, ¶ 25.

---

[1] The Court may consider the contract, which is attached to the Complaint and the obvious subject matter of at least one claim in this lawsuit, without converting Pep Boys' motion to dismiss into a motion for summary judgment. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir.1997).

While working as a truck driver for Swift, Robert Richmond drove a semi-tractor trailer to various Pep Boys stores throughout Florida, and delivered merchandise to Pep Boys' Florida warehouse.  The date, time and location of the deliveries were prearranged by a schedule provided to both Mr.  Richmond and to the appropriate Pep Boys stores.  The schedule did not vary; Mr.  Richmond went to his assigned Pep Boys stores on the same days and at the same time every week.

Upon arrival at a Pep Boys store, Mr.  Richmond would give the key to his semi-tractor trailer to the store's manager on duty.  The manager would unlock the trailer and assign store employees to unload the cargo form the trailer.  Pep Boys' employees also operated the scissors-lift (or other similar lift) to unload the cargo.

On November 20, 2001, Mr.  Richmond, according to his regular schedule, arrived at Pep Boys Store # 252 in St. Petersburg, Florida with a shipment of merchandise.  Upon his arrival, the manager on duty informed Mr.  Richmond that there were no Pep Boys' employees available to operate the scissors-lift or to unload the trailer.  The scissors-lift was owned, controlled and maintained by Pep Boys, and on November 20, 2001 it was in an unsuitable, inadequate and unsafe condition.  In particular, the scissors-lift did not have safety guardrails and chains, the platform was not level, and the lift tilted to the rear.  Mr. Richmond had previously reported the unsafe condition of the scissor-lift at Store # 252 to various store employees and other Pep Boys' representatives on several occasions.

Mr.  Richmond asked a Pep Boys' employee at Store # 252 for the safety guardrails and chains, but they were not provided.  Nevertheless, Mr.  Richmond proceeded to

3

operate the scissors-lift and to unload the cargo from his trailer, without any assistance from a single Pep Boys' employee. In doing so, Mr. Richmond rolled a 2,500 pound crate, which was originally packed by Pep Boys' employees, onto the scissors-lift platform. The create began to roll off the scissors-lift platform because it was uneven and tilted, and because there were no safety guardrails or chains on the lift. The crate continued to roll and pushed Mr. Richmond off the scissors-lift platform, causing him to fall approximately eight to ten feet onto palettes stacked on the concrete pad below the scissors-lift.

The Plaintiffs initially filed this action in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida, on February 24, 2005. On June 10, 2005, while the case was still in state court, the Plaintiffs filed their Second Amended Complaint (Doc. 3). That Complaint alleges three state law claims against Pep Boys: (1) a claim of negligence on behalf of Robert Richmond (Count I) based on Pep Boys' alleged failure to maintain the scissors-lift in a reasonably safe condition and alleged failure to provide personnel to assist with the operation of the scissors-lift; (2) a claim of breach of the Contract Transportation Agreement on behalf of Robert Richmond (Count II) based on Pep Boys' alleged breach of the "LOADING AND UNLOADING" provision in the Contract; and (3) a derivative loss of consortium claim on behalf of Lynn Richmond (Count III). Mr. Richmond seeks damages for his bodily injury, pain and suffering, loss of capacity for enjoyment of life, and compensation for incurred medical expenses and lost wages/lost earning capacity. Mrs. Richmond also seeks damages for the past and future loss of her husband's services, companionship and consortium.

Pep Boys filed its notice of removal on July 30, 2005 (Doc. 1), on the basis of diversity jurisdiction. In response, the Plaintiffs filed a motion to remand (Doc. 10), arguing that Pep Boy's removal was untimely. The Magistrate Judge issued a report (Doc. 20) recommending that the motion to remand be denied, which the Court adopted and confirmed on January 17, 2006 (Doc. 26). Pep Boys filed its motion to dismiss the Plaintiffs' breach of contract claim (Count II), and to dismiss the Plaintiffs' negligence claim (Count I) to the extent it is based on an alleged negligent breach of contract (Doc. 8) while the motion to remand was pending.

## Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it ask for the proper relief," it is sufficiently plead. Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957). As the Supreme Court declared in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove not set of facts in support of his claim that would entitle him to relief." See also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim," Conley, 355 U.S. at 47. Instead, all that is required is that the claimant set forth a "short and plain statement of the claim" sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## Discussion

*Count II - Breach of Contract Claim*

Pep Boys seeks to dismiss Count II, the breach of contract claim, on the grounds that the Plaintiffs have no standing to sue for an alleged breach of the Contract Transportation Agreement between Swift and Pep Boys. Specifically, Pep Boys contends that Mr. Richmond is neither a party or intended third-party beneficiary to the Contract. Florida law[2] is clear that "[a] person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract." Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1030-

---

[2] Because the Court has jurisdiction over this case based on diversity, see 28 U.S.C. § 1332, the Court must apply the substantive law of the forum state. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1306 (11th Cir. 2002).

31 (Fla. 4th DCA 1994) (internal citations omitted). See also Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 279 (Fla. 1985) ("It is axiomatic in contract law that an incidental beneficiary cannot enforce the contract."). According to Pep Boys, a plain reading of the Contract Transportation Agreement demonstrates that Mr. Richmond is not a party to that Contract.

The Court agrees. Mr. Richmond is nowhere mentioned by name in the Contract Transportation Agreement, the Contract was not entered into on behalf of Swift employees, and there is no provision in the Contract that authorizes individual employees of Swift to sue Pep Boys for any breaches of the Contract or recover any damages directly from Pep Boys. Any terms of the Contract which relate to civil lawsuits are directed expressly towards Swift or Pep Boys themselves.[3]

Pep Boys also argues that the Plaintiffs' breach of contract claims must be dismissed because Robert Richmond is not a third-party beneficiary of the Contract Transportation Agreement. Under Florida law, a non-party to a contract may sue for breach of that contract if he is an intended third-party beneficiary of that contract. Caretta Trucking, Inc., 647 So.2d at 1031. A party is an intended third-party beneficiary "only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." Id.; see

---

[3]See, e.g., Doc. 3, Ex. A, ¶ 9, "DAMAGE CLAIMS" (providing time limits for Pep Boys to file suit against Carrier for loss and damage claims); ¶ 10, "UNDERCHARGE AND OVERCHARGE CLAIMS" (providing time limits for either party to file suit for alleged undercharges or overcharges).

also Hirshenson v. Spaccio, 800 So.2d 670, 673 (Fla. 5th DCA 2001) ("The right of an intended, third party beneficiary to sue under a contract is recognized only if the parties clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party."). Pep Boys correctly points out that the Plaintiffs have not alleged in their Second Amended Complaint that Swift and Pep Boys intended for their Contract Transportation Agreement to "primarily and directly benefit" the Plaintiffs. Nor could they, as a plain reading of the Contract clearly indicates that its primary and direct benefit was to provide delivery services to Pep Boys and compensation to Swift; there is no mention of any benefits to the Plaintiffs specifically, or to Swift employees in general. The "LOADING AND UNLOADING" provision of the Contract was intended to benefit Swift by placing the responsibility for counting and loading the cargo with Pep Boys, and to benefit Pep Boys by providing additional assistance with unloading the cargo if necessary. If anything, the Plaintiffs are merely incidental beneficiaries to the Contract which existed between Mr. Richmond's employer and Pep Boys. See Gray v. Executive Drywall, Inc., 520 So.2d 619 (Fla. 2nd DCA 1988); Bryant v. Cole, 282 So.2d 652 (Fla. 2d DCA 1973).

The Plaintiffs do not challenge Pep Boys' third-party beneficiary argument. To the contrary, the Plaintiffs admit in their opposition that they are not proceeding under a third-party beneficiary contract theory, and that they do not intend to go forward under such a theory in the future. See Doc. 19, p. 3. They seek instead to go forward as direct parties to the Contract Transportation Agreement. According to the Plaintiffs, Robert Richmond was, in fact, a party to the agreement between Swift and Pep Boys "because he was an

employee acting within the course and scope of his employment with Swift." Id.  Under the Plaintiffs theory, corporations such as Swift are legal entities which can only act through its agents, officers and employees; and Swift could not have fulfilled its duties under the Contract Transportation Agreement without truck drivers such as Robert Richmond. Conversely, Pep Boys could not have fulfilled its duties under the Contract without its employees, and could not breach the Contract without its employee taking or failing to take some action.  Therefore, because Mr. Richmond was acting within the scope of his employment when he was injured, he was a party to the Contract Transportation Agreement and can seek recovery for Pep Boys' alleged breach.

Acceptance of this non sequitur argument would turn the law of master/servant, the law of agency, and contract law on its head.  Under the Plaintiffs' theory, every single employee of a corporation would instantly become a party to every single contract the employer enters into, so long as the employee performs some service related to the contract.  In that case, each such employee would have the independent authority to modify the terms of the contract, terminate the contract, extend the contracts terms, or yes, sue for an alleged breach of the contract, without first seeking the approval of the corporation's officers or authorized agents.  This would render the contract completely ineffective.[4]

---

[4] The only possible way the Plaintiffs' argument could prevail is if they established Mr. Richmond was an agent of Swift and had the authority to sue on behalf of Swift for Pep Boys' alleged breach of the Contract.  There is no agency relationship here because there are no

(continued...)

9

More importantly, the Plaintiffs are not suing Pep Boys for breach of the Contract in their role as employees or potential agents of Swift and are not seeking recovery or relief on behalf of Swift.  Rather, they are seeking relief <u>for themselves as individuals</u>.  Indeed, the damages they wish to recover are for "bodily injury and resulting pain and suffering, loss of capacity for enjoyment of life and incurred medical expenses, lost wages and loss of earning capacity."  <u>See</u> Doc. 3, ¶¶ 32, 37, 39.  There is no attempt to recover any of Swift's incurred expenses that may have arisen from Mr. Richmond's injury; and, of course, only Swift might sue for that relief.  Thus, even if the Plaintiffs' position had any merit, it falls apart due to the fact that the Plaintiffs are attempting to proceed as individuals, recovering individual damages, under a Contract between two business entities.

The two decisions the Plaintiffs cite in support of their argument are not persuasive. Both deal with common law claims of tortious interference with business relationships, where an employee of the offending corporation was sued in his or her individual capacity for actions taken within the scope of employment by the tortfeasor.  And in both, the Florida courts held that in such discrete circumstances, an employee cannot be sued in his or her individual capacity; rather such claims must be brought against the offending employer

---

[4](...continued)
allegations that Robert Richmond had the authority to enter into or modify the Contract Transportation Agreement with Pep Boy, or to sue for any breaches of that Contract.  The Contract also does not contain any such provisions authorizing lawsuits by any agents, and does not mention Mr. Richmond at all.  <u>See, e.g.</u>, <u>Whitestone Candy Co., Inc. v. Kraft Foods, Inc.</u>, 351 F.3d 1067, 1077 (11th Cir. 2003); <u>Nida Corp. v. Nida</u>, 118 F.Supp.2d 1223, 1227 (M.D. Fla. 2000); <u>Goldschmidt v. Holman</u>, 571 So.2d 422, 424 n. 5 (Fla. 1990); <u>Font v. Stanley Steemer Int'l., Inc.</u>, 849 So.2d 1214, 1216 (Fla. 5th DCA 2003).

directly.  See Cox v.  CXS Intermodal, Inc., 732 So.2d 1092 (Fla.  1st DCA 1999); West v. Troelstrup, 367 So.2d 253 (Fla.  App.  1979).  Those decisions are clearly distinguishable.  In this case, the Plaintiffs seek to insert themselves into a contract between Swift and Pep Boys and sue the other party on their own behalf, not under some common law tort claim (that claim can be found in Count I and shall go forward), but rather under the Contract itself solely by virtue of the fact that they were injured while working for Swift.  This they cannot do.[5]

*Count I - Negligence Claim*

Pep Boys also seeks to dismiss Count I, the negligence claim, but only to the extent that the Plaintiffs intend to base that claim on an alleged "negligent breach" of the Contract Transportation Agreement.  According to Pep Boys, because the Plaintiffs cannot allege a direct breach of contract claim due to the fact that they are not parties or intended third-party beneficiaries to the Contract Transportation Agreement, they also cannot allege any "negligent breach of contract" claim.  In their response, the Plaintiffs vigorously assert that they are not proceeding under any sort of negligent breach of contract claim; rather Count I is strictly a Florida common law claim of negligence.  A plain reading of the Second Amended Complaint further supports the Plaintiffs' argument - there is no contract claim

---

[5] Moreover, the fact that the tort claims against the individual employees were not allowed to go forward, but rather were subsumed in the breach of contract claims between the corporate entities further demonstrates the fallacy of the Plaintiffs' argument.  In these decision, the Florida courts in essence held that any lawsuits concerning a breach of a contract between two business entities can only be brought by and proceed on behalf of the two entities themselves - not by any individual employee.

11

in Count I. To the extent the Plaintiffs rely on the Contract Transportation Agreement in Count I, it is purely to provide the factual background and relationship between the parties. As such, and because Pep Boys has not otherwise challenged Count I, this portion of Pep Boys' motion to dismiss is due to be denied.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED that the Defendant's Motion to Dismiss (Doc. 8) is GRANTED with respect to Count II of the Plaintiffs' Second Amended Complaint and DENIED with respect to Count I. Count II of the Plaintiffs' Second Amended Complaint (Doc. 3) is DISMISSED WITH PREJUDICE. All other remaining claims in the Plaintiffs' Second Amended Complaint may go forward.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 30th day of May, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record